**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| R & M AVIATION, INC., <u>et al.</u>,[1] | Case No. 12-10343 (PSH) |
| Debtors. | Jointly Administered |
| | **Hearing: Tuesday, May 28, 2013 at 10:00 a.m.** |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **Tuesday, May 28, 2013 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Pamela S. Hollis, United States Bankruptcy Judge, in Courtroom 644 of the Everett McKinley Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present the attached ***Motion Of Reorganized Debtors For Entry Of Final Decrees***, a copy of which is hereby served upon you.

Dated: Chicago Illinois
      May 20, 2013

Respectfully submitted,

*/s/ Nicholas M. Miller*

Mark A. Berkoff (ARDC #6194787)
Nicholas M. Miller (ARDC #6295723)
Kevin G. Schneider (ARDC #6302942)
**NEAL, GERBER & EISENBERG LLP**
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

*Attorneys for Reorganized Debtors*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: R & M Aviation, Inc. (1506); R&J Aviation, Inc. (2260); and AMTS Aircraft Holdings, LLC (6066). All Debtors maintain an address at 43W526 US Highway 30, Sugar Grove, IL 60554.

NGEDOCS: 2071744.5

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| R & M AVIATION, INC., et al.,[2] | Case No. 12-10343 (PSH) |
| Debtors. | Jointly Administered |
| | **Hearing: May 28, 2013 at 10:00 a.m.** |

## MOTION OF REORGANIZED
## DEBTORS FOR ENTRY OF FINAL DECREES

R & M Aviation, Inc., d/b/a AeroCare Medical Transport System, Inc. ("AeroCare") and R&J Aviation, Inc. (collectively, the "Reorganized Debtors") respectfully seek the entry of a final decree closing each of their chapter 11 cases (collectively, the "Chapter 11 Cases"), pursuant to sections 105(a) and 350(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3022-1 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"). In support of this motion (the "Motion"), the Reorganized Debtors have attached hereto as Exhibit A the affidavit of Daniel T. Lee (the "Lee Affidavit") and respectfully represent as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: R & M Aviation, Inc. (1506); R&J Aviation, Inc. (2260); and AMTS Aircraft Holdings, LLC (6066). All Debtors maintain an address at 43W526 US Highway 30, Sugar Grove, IL 60554.

**BACKGROUND**

2. AeroCare is a nationally recognized, accredited and award-winning provider of worldwide air ambulance and medevac services and commercial flight nurse escorts. The company offers 24 hour emergency and non-emergency services, and it specializes in transporting patients to and from hospitals, rehabilitation centers, specialized care facilities and private residences. Since its founding 18 years ago, AeroCare has flown more than 10,000 patients in need of medical transportation, both throughout the United States and internationally.

3. In addition, AeroCare is the exclusive provider of time-critical organ procurement services to transplant centers within the states of Illinois, Wisconsin and Arizona. These services include both ground and air components and play an important role to the general public by assisting in the procurement of vital organs needed for life. Without AeroCare's services, organ banks and transplant centers would be left without a provider of life-saving organs to the patients who need them.

4. On March 15, 2012 (the "Petition Date"), the Reorganized Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On January 30, 2013, the Reorganized Debtors filed their Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 406] (the "Plan") and related Disclosure Statement [Docket No. 408].

6. On March 12, 2013, the Court held a hearing and entered an Order Approving Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code and Confirming Debtor's Plan of Reorganization [Docket No. 509] (the "Confirmation Order"). The effective date of the Plan (the "Effective Date") occurred on March 27, 2013, as set forth in a notice filed on March 28, 2013 [Docket No. 521].

7. As described in the attached Lee Affidavit, substantially all of the restructuring transactions contemplated by the Plan were consummated as of, or shortly after, the Effective Date in accordance with the terms of the Plan and the Confirmation Order. Specifically, among other things:

    (a) all Holders of Class 1 Allowed Priority Claims were (1) paid in full in cash on the Effective Date or (2) otherwise paid in accordance with section 4.1 of the Plan;

    (b) the Holder of the Class 3 Castle Bank Secured Claim received on the Effective Date, less the General Unsecured Creditor Carveout, (1) the proceeds of the sale of certain aircraft collateral; (2) the proceeds of certain tax refunds; (3) the proceeds of certain insurance settlement funds; and (4) available cash above certain thresholds.

    (c) all Holders of Class 5 Allowed Vehicle Secured Claims and Class 6 Allowed Other Secured Claims had their Claims reinstated as of the Effective Date, which Claims remain unimpaired;

    (d) the Debtors caused the New Castle Bank Loan Documents and the New Fifth Third Loan Documents to be executed on the Effective Date, and the Holders of the Class 3 Castle Bank Secured Claim and the Class 4 Fifth Third Secured Claim began receiving monthly payments on account of these loan documents as of May 1, 2013, and April 15, 2013, respectively;

    (e) each Holder of a Class 7 Allowed General Unsecured Claim received on or about April 26, 2013, such Holder's *pro rata* share of the General Unsecured Creditor Carveout, which carveout was in the amount of $200,000; and

    (f) since the Effective Date, the Reorganized Debtors have paid their vendors and employees and otherwise operated their businesses without interruption.

8. In addition, as of the date hereof, the Reorganized Debtors have taken a number of other steps to substantially consummate the Plan. Among other things, all expenses arising from the administration of the Reorganized Debtors' estates, including court fees, section 1930(a)(6) fees, and expenses, either (a) will have been paid prior to the hearing date set for this

Motion or (b) in the case of professional fees, will be paid pursuant to orders entered on or before the date of the hearing on this Motion.[3]

9.   Pursuant to section 7.8 of the Plan, Debtor AMTS Aircraft Holdings, LLC was dissolved on April 30, 2013.[4]

10.   Finally, only two contested matters in the Chapter 11 Cases remain unresolved as of the date of this Motion. On April 26, 2013, the Reorganized Debtors filed objections to (a) Proof of Claim No. 90-1, filed by Anthony LaRocco against R & M Aviation, Inc. [Docket No. 538] (the "LaRocco Claim Objection") and (b) Proof of Claim Nos. 2-1 and 2-2, filed by Receivables Management Inc. against R & M Aviation, Inc. [Docket No. 539] (the "RMI Claim Objection"). However, the Reorganized Debtors believe that the LaRocco Claim Objection and the RMI Claim Objection will have been either sustained or settled before the hearing on this Motion.

## RELIEF REQUESTED

11.   Section 350(a) of the Bankruptcy Code states that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Bankruptcy Rule 3022 implements the Bankruptcy Code's requirements, providing similarly that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

---

[3]   In accordance with the undersigned counsel's discussions with the office of the United States Trustee, the Debtors plan to file before the hearing on this Motion a Notice of Payment of Quarterly U.S. Trustee Fees (the "Quarterly U.S. Trustee Fee Statement"). The Quarterly U.S. Trustee Fee Statement will include a report of all quarterly fees paid pursuant to 28 U.S.C. § 1930(a) on account of (a) actual disbursements made during the first quarter of 2013 and (b) projected disbursements to be made during the second quarter of 2013 through the date of the hearing on this Motion. In addition, a hearing on the various final fee and expense applications filed by professionals retained pursuant to section 327 of the Bankruptcy Code has been scheduled for the same date as the hearing on the instant Motion.

[4]   A separate motion to dismiss AMTS's chapter 11 case has been filed contemporaneously herewith.

12. Because the Reorganized Debtors' estates are fully administered, the Reorganized Debtors request the entry of final decrees closing the Chapter 11 Cases.

## BASIS FOR RELIEF

13. The term "fully administered" is not defined in the Bankruptcy Code or the Bankruptcy Rules, but the Advisory Committee Note to Bankruptcy Rule 3022 sets forth a nonexclusive list of factors to be considered to determine whether a case has been fully administered, including whether:

- (i) the order confirming the plan has become final;
- (ii) deposits required by the plan have been distributed;
- (iii) the property proposed by the plan to be transferred has been transferred;
- (iv) the debtor or the successor to the debtor under the plan has assumed the business or the management of the property dealt with by the plan;
- (v) payments under the plan have commenced; and
- (vi) all motions, contested matters, and adversary proceedings have been finally resolved.

14. Various courts have viewed these factors as a guide for determining whether a case should be closed. *See, e.g., In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 223-24 (Bankr. W.D.NY 1997) (closing case upon finding that case had been fully administered according to Advisory Committee Note factors); *In re Jay Bee Enters., Inc.*, 207 B.R. 536, 538-39 (Bankr. E.D. Ky. 1997) (same). In addition to the factors set forth above, courts also have considered whether the plan of reorganization has been substantially consummated. *See Walnut Assocs. v. Saidel*, 164 B.R. 487, 493 (E.D. Pa. 1994) (considering substantial consummation as a factor); *Gates Cmty. Chapel*, 212 B.R. at 224 (same). Finally, other bankruptcy courts have further noted that entry of a final decree is appropriate to stop the accrual of section 1930(a)(6) fees. *See In re Jr. Food Mart of Ark., Inc.,* 201 B.R. 522, 524, 526 (Bankr. E.D. Ark. 1996)

(closing case so "that no further [section 1930(a)(6)] fees accrue"); *Jay Bee*, 207 B.R. at 539 (concluding that "it seems appropriate to close this case to stop the financial drain on the debtor" on account of the continuing accrual of section 1930(a)(6) fees and also noting that there is "no provision of law that prevents closing a chapter 11 case before payment of the [section 1930(a)(6)] fees in question").[5]

15. Although the factors set forth above are important, courts have reaffirmed the view that "these factors are but a guide in determining whether a case has been fully administered, and not all factors need to be present before the case is closed." *In re SLI, Inc.*, Case No. 02-12608, 2005 WL 1668396, *2 (Bankr. D, Del. June 24, 2005); *see also In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. ND Ill 1990) ("The Court finds the Committee Note to the new rule illuminative and essentially adopts its language.  Noteworthy, however, is that all of the factors in the Committee Note need not be present before the Court will enter a final decree.").

16. Bankruptcy courts have also held that a bankruptcy estate is "fully administered" when the Plan has been substantially consummated as defined by section 1101(2) of the Bankruptcy Code. *See In re BankEast Corp.*, 132 B.R. 665, 668 n.3 (Bankr. D.N.H. 1991).  To determine whether a bankruptcy estate is substantially consummated for the purposes of entering a final decree, a court may apply the requirements established by 11 U.S.C. § 1101(2) to the case sought to be closed. *See Walnut Assocs.*, 164 B.R. at 492.  Section 1101(2) defines substantial consummation as follows:

---

[5] As of the date of this Motion, the Debtors have not yet paid any quarterly U.S. Trustee fees for the second quarter of 2013 because such fees have not been billed yet.  Nonetheless, the Debtors intend to pay such fees before the hearing on this Motion.

(a) transfer of all or substantially all of the property proposed by the plan to be transferred;

(b) assumption by the debtor or by the successor to the debtor under the plan of the business or of management of all or substantially all of the property dealt with by the plan; and

(c) commencement of distributions under the plan.

11 U.S.C. § 1101(2); *see also In re JMP-Newcor Int'l, Inc.*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (holding that case was "fully administered" notwithstanding fact that certain disbursements remained to be made); *In re Mold Makers, Inc.*, 124 B.R. 766, 768-69 (Bankr. N.D. Ill. 1990) (same); *In re Jordan Mfg. Co., Inc.*, 138 B.R. 30, 35 (Bankr. C.D. Ill. 1992) (holding that a court should not delay entry of final decree simply because all payments under the plan have yet to be made).

17. Local Rule 3022-1 requires that the party moving to close the case shall state with the notice or motion the actual status of payments due to each class under the confirmed plan. To that end, the distributions contemplated by or described in the Plan have been completed as follows:

| Class | Treatment | Status of Payments/Date(s) of Distribution |
| --- | --- | --- |
| Class 1: Priority Claims | Unimpaired | Distributions totaling $12,991.41 on the Effective Date; distributions totaling $8,993.50 on April 26, 2013 |
| Class 2: Secured Tax Lien Claims | Unimpaired | N/A |
| Class 3: Castle Bank Secured Claim | Impaired | Distribution of $1,379,315.10 on the Effective Date; monthly payments began on May 1, 2013, pursuant to New Castle Bank Loan Documents |
| Class 4: Fifth Third Secured Claim | Impaired | Monthly payments of $15,000 began on April 15, 2013, pursuant to New Fifth Third Loan Documents |

| | | |
|---|---|---|
| Class 5: Vehicle Secured Claims | Unimpaired | Liens were reinstated; cure costs of $7,861.90 paid on the Effective Date the Reorganized Debtors are current on payments |
| Class 6: Other Secured Claims | Unimpaired | Distribution of $6,832.97 on the Effective Date |
| Class 7: General Unsecured Claims | Impaired | Distribution of $200,000 General Unsecured Creditor Carveout made on or about April 26, 2013; per the Plan, subsequent distributions will occur on or about March 27, 2014, and March 27, 2015. |
| Class 8: Equity Interests | Unimpaired | N/A |

## ANALYSIS

18.     Here, an analysis of the relevant factors shows that the Chapter 11 Cases have been "fully administered" within the meaning of section 350 of the Bankruptcy Code, making it appropriate for the Court to enter a final decree.  Among other things:

(i)     the Confirmation Order has become final and is non-appealable;

(ii)    the deposits required by the Plan (*i.e.*, the aircraft sale proceeds, the tax refund proceeds and the insurance settlement proceeds, all held in escrow) were distributed to Castle Bank on the Effective Date;

(iii)   the property proposed by the Plan to be transferred (*e.g.*, the carveout for general unsecured creditors) has been transferred;

(iv)    since the Effective Date, the Reorganized Debtors have assumed the business and management of the property dealt with by the Plan, and have paid their vendors and employees and without interruption;

(v)     commenced Plan payments, as described above; and

(vi)    with the exception of the LaRocco Claim Objection and the RMI Claim Objection (which the Reorganized Debtors believe will be resolved as of the hearing on this Motion), all motions, contested matters, and adversary proceedings have been finally resolved.

19.     Moreover, the Plan has been substantially consummated, making the accrual of substantial U.S. Trustee quarterly fees unnecessarily burdensome on the Reorganized Debtors' business operations.

20.     Accordingly, the estates of the Reorganized Debtors have been "fully administered," and the Chapter 11 Cases should be closed under the express language of section 350(a) of the Bankruptcy Code.

**NOTICE**

21.     Notice of this Motion, has been given to (a) the Office of the United States Trustee for the Northern District of Illinois, (b) counsel to the Reorganized Debtors' prepetition secured lenders, and (c) all creditors listed on the Court's creditor matrix. In light of the nature of the relief requested herein, the Reorganized Debtors submit that no further notice of the Motion is necessary or required.[6]

22.     No previous request for the relief requested herein has been made to this or any other court.

---

[6] Local Rule 3022-1 requires notice of the Motion to "all creditors," unless the court orders otherwise. The Reorganized Debtors submit that there is good cause for the Court to order that notice of the Motion is sufficient under the circumstances. *First*, all creditors received notice of: (i) the Plan, Disclosure Statement and Confirmation Hearing; (ii) the Sale Order and Order Approving Disclosure Statement and Confirming Plan; and (iii) the Notice of Occurrence of Effective Date. *See* Docket Nos. 427; 514; 525. Thus, all creditors already have had numerous opportunities to object to the Reorganized Debtors' progress in these Chapter 11 Cases. *Second*, requiring service of the Motion on all creditors would constitute an unnecessary financial burden on the Reorganized Debtors' business operations. For these reasons, the Reorganized Debtors submit that this Court should order, pursuant to Local Rule 3022-1, that service as described above was proper and sufficient.

WHEREFORE, the Reorganized Debtors respectfully request that this Court (a) enter final decrees, substantially in the form attached hereto, closing each of the Chapter 11 Cases and (b) grant such other and further relief as is necessary and proper.

Dated: Chicago, Illinois
May 20, 2013

Respectfully submitted,

　/s/ Nicholas M. Miller
NEAL, GERBER & EISENBERG LLP
Mark A. Berkoff (ARDC #6194787)
Nicholas M. Miller (ARDC #6295723)
Kevin G. Schneider (ARDC #6302942)
Two North LaSalle Street, Suite 1700
Chicago, IL 60602-3801
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

ATTORNEYS FOR REORGANIZED DEBTORS